345 So.2d 1027 (1977)
E.B. MAGEE
v.
John GRIFFIN and General Motors Acceptance Corporation.
No. 48983.
Supreme Court of Mississippi.
April 27, 1977.
*1028 Roland C. Lewis, Jean D. Muirhead, Jackson, for appellant.
Robert W. King, Jackson, for appellees.
Before PATTERSON, P.J., SMITH and LEE, JJ., and FEDUCCIA, Commissioner.
SMITH, Justice, for the Court:
E.B. Magee has appealed from the final judgment of the Circuit Court of Lincoln County sustaining the defense of res judicata set up in the answer and dismissing his suit against John Griffin and GMAC in which he claimed to have suffered damages in that the defendants had caused him "to *1029 become ill, upset, to be humiliated, embarrassed, and to suffer much mental anguish," to lose possession of his automobile and to incur attorney's fees.
Magee's declaration recited that he had financed his purchase of a Pontiac automobile through GMAC under a contract providing that he make monthly payments until the automobile was paid for. He alleged that "at all times material hereto, the defendant, John Griffin, was acting in his capacity as an agent, servant, and employee of the defendant, GMAC."
Magee's declaration charged that he had made the payments of $135.80 per month required by his contract with GMAC for the months of August and September, 1972 by mailing them directly to GMAC at New Orleans, that Griffin, as agent of GMAC, represented to him, Magee, that he should make the October, 1972 payment directly to Griffin in cash, and that his, (Magee's) wife did so.
Magee alleged further that "it was not until July 7, 1973, that plaintiff was informed by a summons from the Circuit Court of Lincoln County that a default had been made in reference to his account with GMAC."
Griffin and GMAC answered and interposed, among other defenses, the defense of res judicata, exhibiting the entire file in its former action brought against Magee in the Circuit Court of Lincoln County for "Claim and Delivery" [Title 11, Chapter 38, §§ 11-38-1 through 11-38-9 Mississippi Code Annotated (Supp. 1976)] under its contract with Magee covering the sale and purchase of the automobile in question, based upon Magee's default in the payments required by his contract. It is undisputed that a summons was duly served upon Magee personally in the action and this fact is recited in Magee's declaration in the present suit. It is also undisputed and recited in Magee's declaration that he, Magee, deliberately failed to respond to the summons, declined to appear or answer, and allowed GMAC's action to proceed to final judgment against him. There was no appeal from the judgment and the automobile was repossessed in due course under this judgment of the Lincoln County Circuit Court.
In the present case, the Circuit Court of Lincoln County, following a hearing conducted upon the defense of res judicata based upon the former suit, sustained the plea and dismissed Magee's suit against Griffin and GMAC. It is from that judgment of dismissal that Magee now appeals.
Justices Smith, Robertson and Sugg are of the opinion that the action of the trial court in sustaining the plea of res judicata was correct, and that the judgment appealed from should be affirmed both as to Griffin and GMAC. Chief Justice Gillespie and Justices Inzer and Broom consider the court's action to have been correct as to GMAC but to have been error as to Griffin and would affirm as to GMAC and reverse and remand as to Griffin. Justices Patterson, Walker and Lee are of the opinion that the trial court's action was error as to both appellees and would reverse and remand. It will be observed, therefore, that six justices have voted to affirm the sustaining of the plea and the dismissal of Magee's case as to GMAC and therefore the judgment appealed from will be affirmed as to GMAC.
Those justices voting to affirm both as to GMAC and to Griffin consider that the sine qua non, the indispensable fact necessary to Magee's present suit is a wrongful repossession of the automobile and the alleged consequent humiliation, embarrassment and "mental anguish" occasioned thereby. It is apparent from the record, and this is not challenged, that GMAC, in its action brought against Magee, faithfully pursued the remedy which the law provides and that the repossession was accomplished under the solemn judgment of the Circuit Court of Lincoln County, lawfully obtained. It is of paramount significance, these justices believe, that Magee was duly served personally with a summons in the Claim and Delivery action in the manner and form and for the time required by law and thus learned of the nature and purpose of the action against him. This is conceded and recited in Magee's declaration *1030 in the present suit. It is also conceded in like manner that Magee deliberately, and for reasons known only to himself, declined to respond to the summons or to assert any defense, and particularly failed to interpose the affirmative defense of payment to Griffin, who was "at all times material hereto ... acting in his capacity as an agent, servant, and employee of the defendant, GMAC." GMAC's action was predicated upon Magee's default under his contract and proof of payment to Griffin "acting in his capacity as agent" of GMAC would have been a perfect defense. If Magee had pled payment and had prevailed he would have effectually prevented the repossession of the car and avoided the "embarrassment, etc." which, in his present suit he claims to have suffered on account thereof. The final judgment in the claim and delivery action finally and, we think, conclusively, established Magee's default and the right of GMAC to repossess; these issues may not now be relitigated by him.
Under the undisputed circumstances, we do not think Magee could deliberately refuse to answer the claim and delivery action and allow the facts charged in the declaration to be taken as true and confessed, that is, the fact that he was in default under his contract to pay, and willfully suffer the case to proceed to judgment, permit the automobile to be repossessed by legal process, and afterward maintain a suit against Griffin and GMAC, the central and essential issues in which would again be the legal right of GMAC to take the car following Magee's default.
It is true that the law on this subject has not been dealt with uniformly in the cases and text books.
Learned treatises are invaluable aids to judges and are entitled to respect and consideration. However, the conclusions of authors (and decisions of the courts of other states) are not binding upon this Court and should be followed only to the extent that such conclusions and decisions clearly are based upon sound reason and common sense and are such as reasonably may be calculated to lead toward desirable results. A distinguished justice of the United States Supreme Court once remarked, (in effect) that he felt no obligation to perpetuate error or to follow decisions of that Court if he later became convinced that such decisions were wrong, unwise or foolish or had produced undesirable results.
Where the result of a principle or policy produces or is capable of producing clearly undesirable results it should be discarded as less than useful and a new principle or policy more in accord with reason and practical common sense substituted. Multiple suits, where one would suffice, are obviously undesirable. It should be made clear in this case that in Mississippi, where a court of competent jurisdiction, having jurisdiction of both the person and subject matter, proceeds to final judgment from which there is no appeal, the result is binding upon the defendant and the essential facts may not subsequently be relitigated.
It should be borne in mind that the suit by GMAC against Magee was one for "claim and delivery," an entirely new and more comprehensive form of action than replevin, authorized by Mississippi Code Annotated sections 11-37-1 et seq. (1972), adopted March 28, 1973.
Mississippi Code Annotated section 11-38-7 (Supp. 1976) (of the Claim and Delivery Act) provides:
The defendant, or any interested person, may contest the demand of the plaintiff on or before the return day of the writ by filing an answer in writing, under oath, of his claim or defense, itemizing his account, if any, and the case shall be then at issue between the parties, and shall be tried as other cases in the court. The judgment or judgments of the court shall adjudicate and adjust the rights of the several parties as to the subject matter of the suit, and cost may be adjudged accordingly.

It is apparent that an important purpose of the enactment of the legislation was to provide a new form of action whereby the entire controversy would be settled in one suit, thereby preventing the necessity *1031 of multiple suits and appeals arising out of the same subject matter which often resulted under the old replevin statutes. It should be noted that section 11-38-7, supra, provides that the defendant may contest the demand of the plaintiff by filing an answer, under oath, setting up his "claim or defense." It also provides that the case be tried as other cases are and that the Court "shall adjudicate and adjust the rights of the several parties as to the subject matter of the suit." Mississippi Code Annotated section 11-38-3 (Supp. 1976) contains this provision: "The judge shall have jurisdiction to hear the cause, or any matter pertaining thereto ... and to enter such orders and judgment thereon as to adjust the rights of the parties in the subject matter."
In the suit for claim and delivery brought by GMAC against Magee under the new statutes, the Court found that Magee had defaulted, and then, "the court having had a hearing", proceeded to find for GMAC, and to enter final judgment accordingly.
The subsequent suit by Magee against GMAC and Griffin was, in effect at least, an effort on Magee's part to make a collateral attack upon the final judgment in the prior suit for claim and delivery by treating it as a nullity. This is not permissible.
In Strain v. Gayden, 197 Miss. 353, 20 So.2d 697 (1945), this Court said:
It is true that the judgment here complained of was by default, but it is also true that a judgment by default, where personal jurisdiction of a defendant has been obtained, is as conclusive either as an estoppel or bar as a judgment in a contested case. A judgment by default is attended by the same legal consequences as if there had been a verdict for the plaintiff. Freeman on Judgments, 5th Ed., Pages 1393-1395.
(197 Miss. at 365, 20 So.2d at 700).
The final judgment in the claim and delivery action may not simply be ignored by Magee. As this Court said in Bolls v. Sharkey, 226 So.2d 372 (Miss. 1969)
A judgment imports verity, and on collateral attack, every presumption of law is in favor of the judgment. McIntosh v. Munson Road Mach. Co., 167 Miss. 546, 145 So. 731 (1933); and Martin v. Miller, 103 Miss. 754, 60 So. 772 (1912).
(226 So.2d at 376).
In Britton v. Beltzhoover, 147 Miss. 737, 113 So. 346 (1927), Britton had filed suit claiming to own an interest in certain property. In an earlier suit for attachment of the property, although no proper process was had upon Britton, she had entered her personal appearance. Notwithstanding this, Britton made no defense and suffered a judgment to be taken against her by default.
In her suit to partite the property, Britton challenged the validity of the decree so taken. This Court rejected her contention saying: "At the next succeeding term of court in Adams County, judgment was taken by default, sustaining the attachment issue and directing the property attached to be sold, and personal judgment was taken against appellant (Britton) for said amount."
The Court said: "We think the showing made in the bill (Britton's attacking the default judgment) insufficient to excuse her from negligence in making proper defenses at that time in said suit. A party cannot sit idly by and let litigation go against him and afterwards seek to have same set aside, unless there is sufficient showing of fraud and deception by the parties to that litigation to excuse such lack of diligence."
The new form of action created by the Legislature in Chapter 400 of the Laws of 1973 concludes: "The action created and established by this chapter shall be cumulative and in addition to all other actions presently available at law or in equity." The action created by the chapter by its terms is entirely distinct in its scope and finality from that of replevin. This is emphasized by the revision of the replevin statutes at the 1975 session of the Mississippi Legislature, the present chapter on replevin appearing as sections 11-37-101 of Mississippi Code Annotated (1972), which *1032 leaves the chapter on Claim and Possession unaffected.
We think this case demonstrates clearly the necessity for the application of the doctrine of res judicata in situations of this kind. That aspect of the doctrine of res judicata known as collateral estoppel, prevents the relitigation of the question of Magee's default and the right of GMAC to repossess, as these were the central facts in the earlier case and were essential to the judgment obtained against him.
In Lyle Cashion Company v. McKendrick, 227 Miss. 894, 87 So.2d 289 (1956), this Court said:
Under the principle of collateral estoppel appellant is precluded from relitigating in the present suit specific questions actually litigated and determined by and essential to the judgment in the prior suit, even though a different cause of action is the subject of the present suit. The doctrine of res judicata has two aspects: (1) Merger of the cause of action into the judgment or as a bar precluding a party from maintaining another action on the same cause of action irrespective of what issues were litigated or determined in the former action, and (2) the principle of collateral estoppel which precludes relitigation in another action of a specific question actually litigated and determined by and essential to the judgment, even though a different cause of action is the subject of the subsequent proceeding.
(227 Miss. at 906, 87 So.2d at 293).
As this Court said in Etheridge v. Webb 210 Miss. 729, 50 So.2d 603 (1951):
Where a question of fact essential to a judgment is actually litigated and determined by a valid and final judgment, that determination is conclusive between the parties in a subsequent action on a different cause of action. A.L.I., Restatement of Judgments, Sec. 68.
(210 Miss. at 742, 50 So.2d at 606).
In essence Magee's position in this case seems to be that he might, at his personal whim, or caprice, ignore with impunity the solemn processes of the circuit court, suffer final judgment to be taken against him (from which he did not appeal) adjudicating GMAC's right to the automobile and then bring a suit upon an alleged wrongful repossession for damages alleged to have resulted therefrom.
It is, and should be, a paramount concern of the judiciary to prevent multiple suits where one suit will suffice. There is a tendency, perhaps, to forget that one who undergoes the rigors of an action, with all of its traumatic impact, loss of time, delay, substantial expense and disruption of his affairs, with consequent appeals and possible retrials and still other appeals, should be spared having to do this more often than is strictly necessary. Even the successful party after bearing the expense of one trial and of one appeal is, in many instances, hardly a winner.
The central and essential fact asserted in the claim and delivery action against Magee was his default under the contract and the consequent right of GMAC to repossess under the contract. His willful failure to answer or controvert, for whatever reason, amounted to a confession of the charge. Upon that basis the circuit court entered judgment "after a hearing", which was a final adjudication of those matters. The conclusiveness of the judgment is in nowise altered by Magee's refusal to appear or to assert his "claim or defense," if he had any. Magee's "abstention" could not prevent the circuit court from proceeding to final judgment, and this judgment, entered "after a hearing" effectively concluded and adjudicated the central and essential issues of Magee's default and GMAC's lawful right to possession of the automobile. It would be ironical indeed if GMAC, in an action in which due process was accorded Magee and in which the law was faithfully followed, should repossess the automobile under a solemn judgment of a court of competent jurisdiction, which finally adjudicated that Magee was in default and that GMAC was entitled to the automobile under its contract, and then, when that is all over and done with, permit Magee, who had allowed it all to happen, to exact damages predicated *1033 upon the repossession which was in all respects lawful.
AFFIRMED AS TO GMAC.
GILLESPIE, C.J., INZER, P.J., and SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.
PATTERSON, P.J., and WALKER and LEE, JJ., dissent.
REVERSED AND REMANDED AS TO GRIFFIN.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and WALKER, BROOM and LEE, JJ., concur.
SMITH, ROBERTSON and SUGG, JJ., dissent.
PATTERSON, Presiding Justice, concurring in part and dissenting in part:
I concur with a majority of the justices who are of the opinion the trial court erred in sustaining the plea of res judicata interposed by General Motors Acceptance Corporation and John Griffin against Magee insofar as the same applied to Griffin. I dissent from the majority of the justices who are of the opinion the plea of res judicata was properly sustained as to General Motors Acceptance Corporation, hereinafter GMAC.
I am of the opinion res judicata has no application against Griffin, one of the appellees, for the reason he was not a party to the previous suit and neither is there an identity in this suit with the former. The present action is one of tort for fraudulent misrepresentation; the former suit was for claim and delivery, a possessory action. I think it logically follows that the alleged fraudulent conduct of John Griffin, the alleged agent of GMAC, is distinct from the former action brought by GMAC against E.B. Magee for repossession of an automobile pursuant to an installment contract.
It is well established in our jurisprudence that four identities must be present before the doctrine of res judicata is operative. According to Pate v. Evans, 232 Miss. 6, 97 So.2d 737 (1957), Rawlings v. Royals, 214 Miss. 335, 58 So.2d 820 (1952), and Palmer v. Clarksdale Hospital, 213 Miss. 611, 57 So.2d 476 (1952), and other numerous cases, these identities are: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or character in the person against whom the claim is made. There being no identity of the parties to this suit and the former, no identity of the causes of action and no identity of the thing sued for, a majority of the justices is of the opinion the trial court erred in sustaining the plea of res judicata barring suit by Magee against Griffin.
If the plea of res judicata is not applicable, the issue of whether Magee is collaterally estopped to pursue this cause of action has some significance. In this regard we note that a special plea of res judicata only was filed, however, it is presently suggested by appellees that collateral estoppel is meaningful even though it was neither presented to nor considered by the trial court. Although the order sustaining the plea refers directly to the identities of res judicata mentioned in Pate without comment upon collateral estoppel, Justices Smith, Robertson and Sugg are nevertheless of the opinion that Magee is collaterally estopped from pressing this action against both Griffin and GMAC. While there is little doubt that collateral estoppel is an aspect of res judicata and no doubt whatsoever that the purpose of both is to avoid needless suits occasioned by relitigating actions and issues previously determined, nevertheless there is a substantial difference between the doctrines, probably best portrayed by a statement from 46 Am.Jur.2d, Judgments, section 398 (1969), as follows:
The doctrine of res judicata has been declared to be a branch of and grounded in the law of estoppel, and the term "estoppel" has frequently been used both in connection with the rule which precludes the relitigation of particular facts and issues, and the rule which precludes the relitigation of particular causes of action. However, although there may be circumstances under which the doctrines of res *1034 judicata and of estoppel may both be applied, the general principle of estoppel, while akin to, must be distinguished from, the doctrine of res judicata, since the former is based upon conduct, or a representation, and the latter upon an adjudication.
The cases cited lend authenticity to the distinction.
Assuming, but not deciding, the trial court included collateral estoppel as an aspect of its order sustaining the plea of res judicata, I think it was error. A review of Johnson v. Bagby, 252 Miss. 125, 171 So.2d 327 (1965), and indeed, the very cases presently cited in support of collateral estoppel, Lyle Cashion Co. v. McKendrick, 227 Miss. 894, 87 So.2d 289 (1956), and Etheridge v. Webb, 210 Miss. 729, 50 So.2d 603 (1951), express an essential of the doctrine absent from this suit and that is there must have been a previous issue actually litigated before it becomes the basis for an estoppel. Compare Strain v. Gayden, 197 Miss. 353, 20 So.2d 697 (1945). This necessary ingredient is mentioned in our cases on the subject and some, Johnson and Lyle Cashion, supra, perhaps others, refer to Restatement of the Law, Judgments (1942), for this concept. Restatement of the Law, Second, Judgments (1973), expresses this theme in Section 68 in part as follows:
d. When an issue is actually litigated. When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section. An issue may be submitted and determined on a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, a motion for summary judgment (see Illustration 10), a motion for directed verdict, or their equivalents, as well as on a judgment entered on a verdict. A determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof.
* * * * * *
e. Issues not actually litigated. A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action. There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.
It is true that it is sometimes difficult to determine whether an issue was actually litigated; even if it was not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate. But the policy considerations outlined above weigh strongly in favor of nonpreclusion, and it is in the interest of predictability and simplicity for such a result to obtain uniformly.
* * * * * *
An issue is not actually litigated if the defendant might have interposed it as an affirmative defense but fails to do so; nor is it actually litigated if it is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive pleading... .
In the case of a judgment entered without contest by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action... . (Emphasis added.)
*1035 The payment issue could have been interposed by the appellant in the possessory suit for his automobile, but it was not, and Magee suffered final judgment by default against himself. His reason for not responding to the court processes and permitting judgment are unknown, but the fact of default and judgment thereon conclusively establishes, I think, that the issue of payment was never actually litigated by factfinding processes. Therefore, Magee is not collaterally estopped to pursue his tort action against Griffin, in my opinion.
Chief Justice Gillespie, Presiding Justice Inzer and Justice Broom concur with Justices Walker, Lee and myself to this juncture of this opinion. However, they concur with Justices Smith, Robertson and Sugg in their opinion that Magee is barred in this suit against GMAC by either collateral estoppel or res judicata. I dissent from this viewpoint for the reasons heretofore given with regard to Griffin. To briefly restate, my reasons are there is no identity of the parties, no identity of the causes of action and no identity of the thing sued for between this suit and the former and the issue of payment has not been actually litigated. It is my opinion that the trial court erred in sustaining the special plea of res judicata as to both Griffin and GMAC.
The differences of opinion in this case result from an incongruity in our procedure. It is occasioned, I think, by adherence to the principle that a defendant may not counterclaim against a third party. The present factual situation is illustrative. It is true that Magee could have pled payment in the repossession suit (gleaned from the allegations of his present declaration) because of Griffin's misrepresentations to him, but had he prevailed in this affirmative defense by proving misrepresentation, agency and payment, nevertheless it would have been effective only to defeat the possessory claim of GMAC. Magee would have been required, had he wished to pursue the cause of action, to file a separate suit for Griffin's tortious conduct with the attendant complications of agency, scope of authority, etc. We observe that GMAC argues that Griffin was its agent on the collateral estoppel issue, but denies the agency in its answer. In either event the purpose of collateral estoppel or res judicata in preventing multiple suits is lost because relitigation is encouraged, if not required, by not permitting a counterclaim against a third party so that all issues might be settled in one suit at one time.
In this situation I think the penalty of default, suffering judgment, should not be enlarged beyond the issue of the suit in which an answer could have been interposed; that is to say, that it not be broadened to include collateral estoppel barring the tort suit unless the scope of the affirmative defense be increased commensurate with the additional penalty to allow a third party counterclaim so that all issues might be litigated in one suit. Stated differently, if the penalty from default in a single issue suit is to be increased by including collateral estoppel so as to bar a different issue, then I think a corresponding right should be accorded the defendant so he might litigate in one suit the different issue.
Finally, it is my opinion that if res judicata has application prohibiting Magee from his suit against GMAC, that it should be limited to the issue of possession which is not present in this suit.
WALKER and LEE, JJ., join in this opinion.