NEW HAMPSHIRE INSURANCE
COMPANY, Plaintiff,

v.

Jerry VARDAMAN, Jr., Wilson Langston, Patrick Overstreet, Tommy Peacock, Walt Pedden, Heath McGovern, Chuck Balducci, David Work, Sam Sappington, Elizabeth Beach, Chris Dye, Kelly Bracken, Patrick Patterson, Michael Bassie, Will Hood, Joe Denson, III, Joey Murphree Scooter Boyett, Shannon Houston, and Joe Wayne Reynolds, Defendants.

Civ. A. No. GC89–110–S–O.

United States District Court,
N.D. Mississippi,
Greenville Division.

Dec. 9, 1993.

whether a homeowners' insurance policy purchased by Jerry W. Vardaman and wife, Shirley M. Vardaman, parents of the defendant, provides liability coverage to Jerry Vardaman, Jr., for damages allegedly incurred by the other defendants. Since the homeowners' policy excludes coverage for injuries which were expected or intended, the court must determine whether the guilty verdicts returned against Jerry Vardaman act to collaterally estop further litigation.

### Facts

On or about October 26, 1988, defendants Jerry Wayne Vardaman and Joe Wayne Reynolds were indicted for fourteen counts of aggravated assault. The indictments were based upon an altercation which occurred on or about July 1, 1988, in the parking lot of the Western Plaza Shopping Center in Cleveland, Mississippi. The trial testimony indicates that an argument erupted between Jerry Vardaman, Jr. and Wilson Langston. Vardaman left the parking lot and went to his house where he retrieved a pipe and a can of drain cleaner he had been using to strip paint from his car. Vardaman and Reynolds returned to the parking lot. Vardaman testified that he was going to pour the drain cleaner on Wilson Langston's vehicle to get him back for denting his car with a beer bottle. A fight broke out. Vardaman maintains that he was hit from behind, causing the drain cleaner to be jarred from his hand and broadcasted over the crowd. Other testimony indicated that Vardaman intentionally threw the acid on the group. On or about May 18, 1989, a jury found Jerry Vardaman guilty of one count of aggravated assault of Langston Wilson and thirteen counts of simple assault. The Mississippi Supreme Court affirmed the jury verdict on May 27, 1992. *See Vardaman v. State of Mississippi,* 602 So.2d 1163 (Miss.), reh'g denied (Miss. July 22, 1992).

### Discussion

The plaintiff maintains that Jerry Vardaman is precluded from arguing that he did not intend to injure the other defendants since the jury found him guilty of aggravated

Edward J. Currie, Jr., Steen, Reynolds, Dalehite & Currie, Jackson, MS, for plaintiff.

Jerry Vardaman, Jr., Pro Se.

Tommie Gregory Williams, Upshaw, Williams, Biggers, Page & Kruger, Greenwood, MS, for defendant Vardaman as to Cross–Claim.

Gerald H. Jacks, William L. Kimmel, Jacks, Adams & Westerfield, Cleveland, MS, for defendants Chuck Balducci, Joe Denson, III, Wilson Langston, Heath McGovern, Sam Sappington, David Work.

Jack D. Warren, Jackson, MS, for defendant Patrick Overstreet.

Lindsey C. Meador, Cleveland, MS, for defendants Walt Peden, Elizabeth Beach.

### MEMORANDUM OPINION

SENTER, Chief Judge.

This declaratory judgment action is before the court on the agreement of the parties submitting the cause for final adjudication. The parties have submitted for the court's consideration memorandums of law and the majority of the trial transcript of the Bolivar County Circuit Court criminal case against Jerry Vardaman, Jr., and Joe Wayne Reynolds. The general issue before the court is

assault. The statute pursuant to which Vardaman was indicted and found guilty states:

> (2) a person is guilty of aggravated assault if he ... (b) attempts to cause or purposely or knowingly cause bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; ....

Miss.Code Ann. § 97–3–7(2)(b). Vardaman was also found guilty under Mississippi's simple assault statute, which states:

> (1) A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another....

Miss.Code Ann. § 97–3–7(1)(a).

■ Once a court has decided an issue essential to its judgment, collateral estoppel precludes a party against whom the issue was decided from relitigating it. *Metro Charities Inc. v. Moore*, 748 F.Supp. 1156, 1160 (S.D.Miss.1990); *see Ingalls Shipbuilding Div., Litton Systems, Inc. v. Parson*, 495 So.2d 461, 463 (Miss.1986). The doctrine has the effect of conclusively establishing a question of law or fact that has received a final judgment for the purposes of a later lawsuit. *Garraway v. Retail Credit Co.*, 244 Miss. 376, 141 So.2d 727 (Miss.1962). In addition to promoting judicial economy and protecting litigants from the burden of relitigation, collateral estoppel serves to prevent inconsistent judgments which can undermine the finality and integrity of the judicial system. *See State Farm Mutual Automobile Insurance Company v. Universal Underwriters Insurance Co.*, 601 F.Supp. 286, 288 (S.D.Miss.1984). "The unsuccessful party is precluded from relitigating the fact so found." *Jordan v. McKenna*, 573 So.2d 1371, 1375 (Miss.1990).

■ The general rule remains, however, that fact questions should be completely litigated in each case; the doctrine of collateral estoppel is merely an unusual exception to the general rule. *Id.* 601 F.Supp. at 288. "Where there is room for suspicion regarding the reliability of those first fact findings, collateral estoppel should never be applied." *Mississippi Employment Secur. Com. v.*

*Philadelphia Municipal Separate School District*, 437 So.2d 388, 397 (Miss.1983).

■ A factual or legal issue which has been adjudicated in a prior criminal trial can be used to collaterally estop relitigating that issue in a civil action. *See Jordan*, 573 So.2d at 1377 ("[T]here is no reason on principle why collateral estoppel's preclusive effect should not apply in civil actions where the finding offered in the civil action is one made beyond a reasonable doubt in the criminal action and collateral estoppel's requisites are otherwise met."); *U.S.F. & G. Co. v. Moore*, 306 F.Supp. 1088, 1095 (N.D.Miss.1969) ("... a conviction in a prior criminal case is conclusive, in a subsequent civil action, of the facts on which the conviction was based."); *United States v. Thomas*, 709 F.2d 968, 972 (5th Cir.1983) ("Because of the existence of a higher standard of proof and greater procedural protection in a criminal prosecution, a conviction is conclusive as to an issue arising against the criminal defendant in a subsequent civil action.").

■ The court's use of the Bolivar County verdicts is governed by 28 U.S.C. § 1738,

> ... judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken....

A federal court sitting in a diversity case is *Erie* bound to apply the substantive law of the forum state. A federal court applies the rules of preclusion of the state court from where the judgment comes. A prior state court judgment cannot be given a greater collateral estoppel effect than the state court would give it. *Reimer v. Smith*, 663 F.2d 1316, 1326 (5th Cir.1981).

■ Mississippi's rule of preclusion controls the question whether collateral estoppel is applicable here. The Mississippi Supreme Court has held that the doctrine of "[c]ollateral estoppel applies where three elements are present:

> (1) The issue involved in the second suit was identical to the one involved in the previous suit; (2) the issue was actually litigated in the prior action; and, (3) the

resolution of the issue was necessary to the prior judgment."

*Evans v. Sharpley,* 607 So.2d 1210, 1213 (Miss.1992). The Mississippi Supreme Court followed the announcement of the three part test with this sentence:

> An additional requirement applicable to this case is that the party against whom the doctrine is applied must have had a full and fair opportunity to litigate the issue in the previous action and must have been able to foresee the future litigation. *Jordan v. McKenna,* 573 So.2d 1371, 1375 (Miss.1990).

*Evans,* 607 So.2d at 1213. This "additional requirement" arguably may be applicable only to that case. In the case *sub judice,* if Mississippi's rule of collateral estoppel precludes the litigation of the question of whether the injuries sustained were expected or intended, then this court must decide that the exclusionary clause of the homeowners' policy prevents liability from attaching to the plaintiff.

Prior to *Evans v. Sharpley,* Mississippi's collateral estoppel rule required strict identity of parties or mutuality of parties between the two lawsuits.[1] In *Jordan v. McKenna,* the Mississippi Supreme Court allowed the doctrine to be used offensively against the guilty defendant in a subsequent civil action by a party who was the prosecuting witness or victim in a prior criminal case. The court concluded that "[c]ommon sense suggests that there is enough of an identity of the parties in the two cases so that there is no rational reason for refusing to apply collateral estoppel here on grounds of lack of mutuality."

*Jordan* involved a civil damage suit by Marie Redus McKenna against John Jordan for assault and battery. In the criminal trial, Jordan was found guilty of raping McKenna. The Circuit Court allowed the guilty verdict to be admitted during the civil trial. On appeal the Mississippi Supreme Court held that the factual determination that Jordan had raped McKenna had already been made, and that he was collaterally estopped from asserting his innocence during the civil trial. The *Jordan* Court warned that collateral estoppel was inappropriate when the reliability of the first fact findings was suspicious. The court stated that suspicion could arise when "... the party against whom the fact is sought to be established did not have reason to foresee the future litigation and did not have adequate incentive to genuinely contest the fact." *Id.* at 1375 (citation omitted).

The court finds that similar to John Jordan, Jerry Vardaman had every incentive to fully litigate the issues during his criminal trial, and that it was easily foreseeable that a civil suit would be filed. There is no question that the issue of intent was litigated in the criminal trial and that it was necessary for the jury verdict (elements two and three).

■ The homeowners' policy contains the following exception to coverage:

## SECTION II—EXCLUSIONS

1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

> a. which is expected or intended by the insured;

New Hampshire Insurance Company Homeowners Policy, page 9 of 12. The court is concerned with the first element of Mississippi's collateral estoppel test; whether a conviction of aggravated assault actually is the litigation of the issue that the bodily injuries were expected or intended. A conclusion by the Bolivar County jury that Vardaman *purposely* or *knowingly* caused serious bodily injury, which was required to find him guilty of aggravated assault, is a conclusive finding that Vardaman acted intentionally. *See Hutchinson v. State,* 594 So.2d 17 (Miss.1992) ("intentionally" inflicted injury with a deadly weapon is aggravated assault).

---

1. In *Johnson v. Bagby,* 252 Miss. 125, 171 So.2d 327, 330 (Miss.1965), the Mississippi Supreme Court was asked to consider relaxing the mutuality requirement, but concluded that it was not appropriate to the facts of the case. "[W]e still hold that it is necessary that the parties to the subsequent action must be the same as those in the prior action." *Id.; But see Schuster v. Martin,* 861 F.2d 1369, 1372 (5th Cir.1988) (privity of parties satisfies mutuality).

Additionally, the Bolivar County jury found Vardaman guilty of thirteen counts of simple assault. Simple assault also requires finding the defendant acted intentionally; the distinction being "with a deadly weapon." *See Hutchinson.* Rule 404(b) of the Federal Rules of Evidence allows the introduction of misdemeanor convictions to show intent. But misdemeanor convictions are frowned upon when used as conclusive evidence that an issue is established. This is due to the relative trivial nature of a misdemeanor. It is felt that there is little incentive for a party to fight misdemeanor charges. The misdemeanor convictions in this case are different, in that Vardaman was tried for aggravated assault and the jury returned lesser included offense verdicts of simple assault.

■ It is not necessary for the court to take into consideration the simple assault convictions, since the jury concluded that Vardaman acted intentionally as to Wilson Langston, and thus all other injuries arising from Vardaman's intentional act are excluded from coverage also. *See Allstate Ins. Co. v. Moulton,* 464 So.2d 507, 509 (Miss.1985) (unintended consequences of an intentional act do not qualify as an "accident" to be covered by defendant's comprehensive dwelling policy). Additionally, the homeowners' policy not only precludes intentionally inflicted injuries, but also those expected. The court finds that the injuries suffered by the defendants, other than Wilson Langston, were foreseeable or easily expected when Vardaman intentionally threw the drain cleaner at Wilson Langston, thus excluding from coverage their bodily injury.

Since the jury has concluded Vardaman acted intentionally to cause serious bodily injury, then any resulting injuries would have been intended or expected. This court is collaterally estopped from finding otherwise. Because of the jury verdict, the defendants beg the question when arguing that Vardaman's testimony shows that he only intended to pour the drain cleaner on Langston's automobile. Accordingly, the court finds that as a matter of law, the homeowners' policy provided by the plaintiff does not provide coverage to Jerry Vardaman for the injuries suffered by the other defendants.

■ In the alternative, since this cause is before the court upon the stipulated record, the court finds by a preponderance of the evidence that Jerry Vardaman acted intentionally to inflict injury upon the other defendants. The overwhelming weight of the testimony clearly shows that Vardaman intentionally threw the drain cleaner at the assembled crowd. The court is most persuaded by the testimony of Patrick Patterson and Michael Bassie who both testified that they saw Jerry Vardaman throw the drain cleaner over the crowd. Bassie specifically stated that no one was around Vardaman when he threw the drain cleaner. The bodily injury sustained by the defendants, because of the intentional conduct of Vardaman, is excluded from coverage by the homeowners' policy issued by the plaintiff. The plaintiff has no legal obligation to defend Jerry Vardaman in any action or indemnify him for any judgment received.

An ORDER in accordance with this Memorandum Opinion shall be issued.

### ORDER OF FINAL JUDGMENT FOR PLAINTIFF

In accordance with a Memorandum Opinion issued this day, IT IS ORDERED:

That the plaintiff has no obligation to defend defendant Jerry Vardaman in any suit arising from the facts at bar, nor is there an obligation by the plaintiff to indemnify the defendant Jerry Vardaman for any judgment rendered against him as a result of the incident which was before the court.

That this cause is finally dismissed with prejudice.

SO ORDERED.